IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARTHUR J. TAGGART, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | CIVIL NO. 00-4205-GPM |
| ) | |
| WMAQ CHANNEL 5 CHICAGO, ) | |
| MICHELLE RUBENSTEIN, NATIONAL ) | |
| BROADCASTING COMPANY, DAVE ) | |
| SAVINI, LYNN OBERLANDER, and ) | |
| UNKNOWN PARTY, ) | |
| ) | |
| **Defendants.** ) | |

FILED
OCT 30 2000
C. PATRICK MURPHY
SOUTHERN DISTRICT JUDGE
DISTRICT OF ILLINOIS

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter is before the Court on Defendants' motion to dismiss for failure to state a claim (Doc. 10), Defendants' motion to strike (Doc. 12), and Plaintiff's motion to reconsider this Court's filing deadline order (Doc. 23). The action was removed to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446 on August 8, 2000, on the basis that the Court has original and exclusive jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) for alleged violations of federal copyright law. The Court has carefully considered the pending motions and will rule without a hearing.

### BACKGROUND

This action is brought, *pro se*, by Arthur Taggart. Plaintiff is currently an inmate at Big Muddy River Correctional Center pursuant to his 1989 conviction on five counts of aggravated criminal sexual assault involving two minor boys. Plaintiff's conviction and his sentence of consecutive terms of imprisonment for 30 and 15 years have been affirmed by an Illinois appellate court. *See People v. Taggart*, 599 N.E.2d 501, 523 (Ill. App. Ct. 1992). It is undisputed that

Taggart was interviewed at the prison on April 22, 1999, by WMAQ, a Chicago-based television station that is owned and operated by NBC.

For purposes of the motion to dismiss, the Court understands the facts leading up to the interview to be as follows: Plaintiff was contacted by a producer for WMAQ who expressed interest in interviewing him. Taggart pronounced interest in the idea and agreed to an interview. WMAQ then sent correspondent Dave Savini, along with WMAQ cameraman Hal Bernstein, to conduct the interview on April 22, 1999. Mr. Savini conducted a "question and answer" session with Plaintiff, and Plaintiff allegedly requested that the taped interview not be used in any manner.

On May 17 and 18, 1999, WMAQ broadcast a two-part report entitled "Camp Caution" on its 10:00 p.m. newscast (the "Report"). The Report concerned the lack of state regulation of summer camps for children and alerted parents to potential dangers, including injuries, drowning and exposure to sex offenders. The fifteen minute report included the following excerpt from Taggart's interview:[1]

> Taggart: I do not believe I was guilty of aggravated criminal sexual assault.
>
> Voiceover: Arthur Taggart is a former camp director and current inmate at a downstate Illinois prison. He was sent there for molesting two boys from west suburban Addison, kids who were once enrolled at his Running Deer Camp, in Kentucky. His brochure advertising the camp shows a lot of naked boys.

---

[1] Defendants attached a transcript of the broadcast (Exhibit A) and a videotape copy (Exhibit B) of the Report to their motion to dismiss. On a motion to dismiss, the Court may consider documents incorporated by reference to the pleadings without transforming the motion into one for summary judgment if the documents are referred to in the complaint and are central to the plaintiff's claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also Fudge v. Penthouse Int'l*, 840 F.2d 1012, 1014-1015 (1st Cir. 1988) (considering publication attached to defendant's motion to dismiss where plaintiff did not attach copy of the challenged publication to the complaint).

| | |
|---|---|
| Savini: | Would you also be nude? |
| Taggart: | Yeah. |
| Savini: | So you would be nude with the boys? |
| Taggart: | Uh-huh, and any staff that might happen to be there too. |
| Voiceover: | He says naked boys would sometimes even share his sleeping bag. |
| Taggart: | I sleep without clothes, they sleep without clothes. If they happen to come and want to lay in bed with me, we'd both be without clothes. |
| Voiceover: | This wasn't Taggart's first arrest. Back in the 60s he was convicted of another crime involving a child. But that didn't stop him from opening a camp. |
| Savini: | Is it a stereotype, or misconception, or is it pretty common that kids get molested at these camps? |
| Taggart: | Molested's not the right term to use. |
| Savini: | What would you call it? |
| Taggart: | Learning experience. |

Defendants properly removed Plaintiff's amended complaint from the Second Judicial Circuit for Jefferson County, Illinois to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446.[2] The allegations found in Plaintiff's 62-page amended complaint consist of several claims sounding in tort law, including a claim for invasion of privacy (Counts I and II), intrusion upon seclusion (Count III), public disclosure of previously private facts (Counts IV and V), and commercial appropriation/invasion of right of publicity (Counts VI and VII). Count VIII sounds in contract law

---

[2]Plaintiff names an unknown party as a defendant, identifying this party only as an un-named photographer who videotaped the April 22, 1999, interview. Defendants, in their motion to dismiss, identify this person as Hal Bernstein. Accordingly, the Court will substitute Hal Bernstein for the unknown party.

and comprises a single count for breach of implied contract. Lastly, three counts allege violation of federal copyright law (Counts IX, X, and XI).

This Court has original and exclusive jurisdiction over claims of infringement or construction of copyrights. 28 U.S.C. § 1338(a). *See also, I.A.E. Inc. v. Shaver*, 74 F.3d 768, 774 n.4 (7th Cir. 1996). Because this Court's jurisdiction depends on the viability of Counts IX, X, and XI, the Court addresses these counts first.

Plaintiff argues that under federal copyright law he is the sole owner of rights to "this performance" (Count IX, para. 6), and the right to authorize any use or publication of the videotaped record of the interview resides with him. Plaintiff further asserts that, as sole owner of the rights to the "performance," the use of any part or publication of excerpts was improper (Count X, para. 2). Finally, Plaintiff asserts that, as the "sole actor portrayed in the above mentioned video tape . . ." (Count XI, para. 2), any publication without his consent "is actionable since the performance was 'fixed' on video tape and thus [it is] eligible for copyright protection." (*Id.*)

Plaintiff seeks injunctive relief, including the destruction of all existing copies of the interview, regardless of the medium. Plaintiff also seeks actual damages, including damages for the state law claims, totaling two hundred and fifty million dollars ($250,000,000.00) and punitive damages in the amount of seven hundred and fifty million dollars ($750,000,000.00).

In their motion to dismiss, Defendants argue that the relief sought is presumptively unconstitutional and that Plaintiff's copyright claims fail for two reasons. First, Taggart has failed to allege he has registered copyright interests in the videotaped interview. Secondly, even if Taggart would amend his complaint to cure this pleading defect, it would be futile as an individual does not have a copyrightable interest in thoughts uttered during an interview.

Plaintiff, instead of answering Defendants' motion to dismiss, filed a motion (Doc. 23) which asks the Court to reconsider the filing deadline order entered September 14, 2000 (Doc. 20). Plaintiff seeks to set a new filing deadline of October 10, 2000, to respond to the motion to strike[3] and a October 31 deadline to respond to the motion to dismiss (Doc. 23). Plaintiff's assertion of health problems supported one extension of time to respond to pending motions, but the Court cannot go so far as to continue to extend all deadlines. An additional 30 days to respond to Defendants' motion to dismiss and motion to strike was granted to Plaintiff on September 12, 2000 (Doc. 20). Plaintiff has filed a response to the motion to strike (Doc. 24), however, instead of preparing a response to the motion to dismiss, Plaintiff continues to assert the need for additional time. Therefore, Plaintiff's motion to reconsider this Court's filing deadline order is denied.

## ANALYSIS

As a preliminary matter, the Court notes the standard under which it must consider a motion to dismiss for failure to state a claim upon which relief can be granted brought pursuant to Federal Rule of Civil Procedure 12(b)(6). In ruling on a motion to dismiss, a court must take all allegations in a complaint to be true and view them, along with all reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir. 1981). A motion to dismiss is properly granted only if it appears beyond doubt that a plaintiff is unable to prove any set of facts which would entitle him or her to relief. *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

---

[3] As this has already passed, this request is moot.

The Copyright Act of 1976 requires that certain conditions be fulfilled before an infringement action may be brought. One criterion that must be met is copyright registration.[4] Section 411(a) of the Act provides that "no action for infringement of the copyright law in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Within the many decisions, it is well-decided that copyright registration is a condition precedent to filing an infringement action. *See e.g., Roth Greeting Cards v. United Cards Co.*, 429 F.2d 1106 (9th Cir. 1970); *Burns v. Rockwood Distributing Co.*, 481 F. Supp. 841, 845 (N.D. Ill. 1979); *Geritrex Corp. v. Dermarite Industries, L.L.C.*, 910 F. Supp. 955 (S.D.N.Y. 1996); *Frederick Fell Publishers v. Lorayne*, 422 F. Supp. 808 (S.D.N.Y. 1976).[5] Even if Plaintiff were to amend his complaint to cure this defect, the complaint still fails to state a claim upon which relief can be granted.

From time to time courts have recognized common law protection for the spoken word, however, courts have not, and cannot, recognize a proprietary interest where there is no tangible embodiment of the expression of an idea. *See generally*, 1 MELVILLE B. NIMMER ET AL., NIMMER ON COPYRIGHT § 2.02, at 2-21 to 2-25 (2000); *see also*, 1 MELVILLE B. NIMMER ET AL., NIMMER ON COPYRIGHT § 1.08[C][2] (2000) ("Thus if a work that itself is not a writing (*e.g.*, an athletic event

---

[4]The exception to this prerequisite, found in § 411(a), expressly allows an infringement action for alleged violations of the rights of an author under section 106A(a), and subject to the provisions of subsection (b). It should be noted that the complaint is not artfully drafted. However, the *pro se* plaintiff has clearly chosen in the amended complaint to assert ownership rights. Albeit difficult to understand which sections of the Copyright Act Plaintiff's claim might sound in, § 106A(a) does not apply to Plaintiff's claims.

[5]In *Frederick Fell Publishers*, the court dismissed a complaint that failed to allege compliance with the registration prerequisites. The court dismissed the complaint without prejudice to the plaintiff and held such registration was "jurisdictionally required." 422 F. Supp. at 811.

or parade) is broadcast or otherwise disseminated in a 'written form' . . . then such a writing itself may claim copyright protection. The copyright in that case lies in the manner of photographing or otherwise recording the event, not in the event itself."); *cf. Hemingway v. Random House, Inc.*, 23 N.Y.2d 341 (1969). Moreover, Congress has denied copyright protection to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). If this Court were to recognize Plaintiff's claim, it would be departing from rudimentary copyright law. Such an expansion of copyright law would be singular and unjustified.

The Western District of Virginia has addressed an argument particularly similar to the argument presented by Plaintiff. *See Falwell v. Penthouse Int'l, Ltd.*, 521 F. Supp. 1204 (W.D. Va. 1981). In that case, the Reverend Jerry Falwell claimed copyright interests to interviews of him conducted by a magazine's reporters. Reverend Falwell contended that the interview appeared without his consent and contrary to specific conditions given orally to the reporters at the time of the interview. *Id.* at 1206. The court rejected Reverend Falwell's copyright claim, finding that:

> Plaintiff cannot seriously contend that each of his responses in the published interview setting forth his ideas and opinions is a product of his intellectual labors which should be recognized as a literary or even intellectual creation. There is nothing concrete which distinguishes his particular expression of his ideas from the ordinary.

*Id.* at 1208.

Unquestionably, the facts of the *Falwell* decision mirror the facts before the Court. Like Falwell, Taggart claims he did not consent to the publication of the interview, and he expressed conditions as to its use. In addition to the factual similarities, the Virginia court's holding is consistent with the Seventh Circuit's definition of authorship. The Seventh Circuit Court of Appeals

has stated that "[t]o qualify as an author, one must supply more than mere direction or ideas. An author is 'the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection.'" *Erikson v. Trinity Theater, Inc.* 13 F.3d 1061, 1071 (7th Cir. 1994) (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)). Therefore, if anyone was the "author," it may very well have been the cameraman who fixed the ideas into a tangible expression, the videotape.

Furthermore, a work is copyrightable under the Copyright Act of 1976 if "[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101.

Plaintiff's claim does not fail for falling short of being in a tangible form, the videotape of the interview is fixed in a "tangible medium of expression" as required by 17 U.S.C. § 102(a). Yet Plaintiff's claim fails because the utterances made during an interview are not an expression of an idea for the purpose of copyright law, they are simply an idea, and thus not subject to copyright protection. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344-45 (1991). *See also, Falwell*, 521 F. Supp at 1208. Plaintiff's reading of copyright law to protect his interview comments with WMAQ as a work of authorship conflicts with the "most fundamental axiom of copyright law [that no] author may copyright his ideas or the facts he narrates." *Feist*, 499 U.S. at 344-345. The ambit of materials to which copyright protection extends does not include "ideas which are not protected under the Copyright Act." *Erickson*, 13 F.3d at 1071; *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea . . . embodied in such a work."). Affording such protection would make each vocalization a piece

-8-

of property that is afforded the formidable protection of copyright law. Furthermore, affording such protection to materials gathered in the daily task of the news reporter would essentially bring the industry to a halt.

Albeit enigmatic at times "[i]t is a fundamental precept of copyright law that only the expression of ideas, and not the ideas themselves, are copyrightable." 1 MELVILLE B. NIMMER ET AL., NIMMER ON COPYRIGHT § 2.02, at 2-22 (2000). And with no disrespect to how diverse, distinctive, aberrant, eccentric, odd or bizarre one's comments, thoughts and opinions may be, those expressions simply do not rise to the level of a literary or intellectual creation that enjoys the protection of the copyright law. Although the Defendant interviewer likely contemplated his questions before asking them of the Plaintiff, Plaintiff's comments during the interview were unprepared and spontaneous responses. The interaction that was recorded on video proceeded, as admitted by Plaintiff, in a question and answer format, where banter and informal exchange are likely to occur. With such format, there is no ability to partition the thoughts and expressions on the subjects discussed which would assist in identifying Plaintiff's averred copyrighted material. Accordingly, Defendants' motion to dismiss is granted with respect to Counts IX, X, and XI.

The Court notes that following the dismissal of the copyright claims, the only claims remaining are state law claims. Pursuant to 28 U.S.C. § 1447(c), "[if] at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." And the Court is mindful that the Seventh Circuit has opined, "[w]hen the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations." *Payne v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citing *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir.

1994)). Here, the Court finds no countervailing considerations, and for this reason, the action shall be remanded.

## CONCLUSION

For the foregoing reasons, the Court hereby **SUBSTITUTES** Hal Bernstein for the Unknown Party in this action. Defendants' motion to dismiss (Doc. 10) is **GRANTED** with respect to Counts IX, X, and XI, and those Counts are **DISMISSED with prejudice**. Because the Court lacks subject matter jurisdiction over the remaining claims, this action is hereby **REMANDED** to the Circuit Court for the Second Judicial Circuit for Jefferson County, Illinois pursuant to 28 U.S.C. § 1447(c). Moreover, because the Court lacks subject matter jurisdiction, the Court does not rule on the other pending motions.

**IT IS SO ORDERED.**

DATED this 30th day of October, 2000.

_G. Pat Murphy_
G. PATRICK MURPHY
Chief United States District Judge